J-S70019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
       :        PENNSYLVANIA
       :
       v.        :
       :
       :
ALLEN HARIHAN        :
       :
       Appellant        :    No. 506 EDA 2018

Appeal from the Judgment of Sentence September 29, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006845-2014,
CP-51-CR-0006846-2014

BEFORE:  GANTMAN, P.J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED FEBRUARY 12, 2019**

Allen Harihan appeals from the judgment of sentence entered following

his jury-trial conviction for indecent assault by forcible compulsion, corruption

of minors, and sexual assault.[1] Harihan claims that the Commonwealth's

evidence was so contradictory that it was insufficient to support any verdict of

guilt and that the verdict was against the weight of the evidence. We affirm.

Harihan was arrested for crimes committed on March 11, 2014, against

O.V. and her daughter C.V.[2] The case proceeded to a jury trial in March 2017.

At trial, C.V. testified that in March 2014, she was 13 years old. N.T.,

3/15/17, at 41. C.V. stated that Harihan previously had a relationship with her

---

[1] 18 Pa.C.S.A. §§ 3126(a)(2), 6301(a)(1), and 3124.1, respectively.

[2] This Court granted a motion to seal the record, and, to protect the minor
victim's identity, we will use initials for the minor victim and her mother.

mother, O.V., and in March 2014 they were "on and off." *Id*. at 42. Harihan had lived with the family starting in 2013, and she believed he lived with them in March 2014, but was not sure, as she could not remember when he moved. *Id.* at 42-43. C.V. stated that there had been previous times that she called the police because of something that happened between Harihan and O.V. *Id.* at 55.

C.V. testified that on March 11, 2014, O.V. called her, told her she would be home soon, and asked C.V. to be downstairs to open the door for O.V. *Id.* at 43-44. Although a babysitter had been at the home earlier, she left shortly before O.V. arrived home. *Id.* at 43. C.V. waited for her mother downstairs. *Id.* When O.V. arrived home, Harihan came in right after her. *Id.* He "pushed" to get into the house and locked the door. *Id.* at 43, 45. O.V. told C.V. to go upstairs. *Id.* at 43. C.V. testified that O.V. appeared frightened when she came home and that O.V. and Harihan were arguing. *Id.* at 47-48. C.V. went to her bedroom, and Harihan came upstairs and "jumped on top of" her. *Id.* at 50. He started "tearing" her shirt, and she was unsure how far he had ripped it. *Id.* 51-52. C.V. stated Harihan touched her breasts over her shirt, she told him to get off, and she was "probably crying." *Id.* at 52-53. O.V. came upstairs and pushed him off. *Id.* at 53. C.V. testified that Harihan and O.V. did not have a conversation while still in her room. *Id.* at 54.

O.V. also testified and likewise said that she and Harihan had been in a relationship, which lasted about six months to a year. *Id.* at 89. Harihan began living with the family in June or July 2013. *Id.* at 90. He moved out four or

five months later, because he had been physically violent with O.V. *Id.* at 90-92. She had called the police many times. *Id.* at 93. After he moved out, he did not come to the house, but did keep contacting her at her job. *Id.* at 96. In March 2014, Harihan did not have belongings at the house and no longer had keys. *Id.* at 105.

O.V. testified that on the date of the incident, she received a call at work from the babysitter because Harihan was at the door. *Id.* at 97. O.V. spoke with the babysitter, C.V., and Harihan. *Id.* Harihan then left O.V.'s home. *Id.* at 98. O.V. left work, and took the bus home. *Id.* at 99. When she got off the bus, she saw Harihan. *Id.* He asked her for money, and they went to an ATM, where she withdrew $60.00 and gave it to Harihan. *Id.* at 99-100. O.V. went to a bar, where she told the bartender that someone was looking for her. *Id.* at 100. The bartender had someone walk her half way home. *Id.* When she arrived home, Harihan was there, and pushed her into the house. *Id.* at 100-101, 103-04. O.V. stated that, as C.V. was on her way upstairs, she said she was going to call the cops. *Id.* at 105. Harihan said that if she called the cops, he would hurt the children.[3] *Id.*

O.V. testified that Harihan asked to use the bathroom, and he went upstairs. *Id.* at 106. O.V. then heard C.V. screaming. *Id.* at 107. She went upstairs and found Harihan on top of C.V. *Id.* Harihan had ripped C.V.'s shirt off, and C.V. was screaming for him to get off. *Id.* at 107-08. O.V. grabbed

---

[3] There were two younger children in the house at the time.

Harihan and threw him off C.V. *Id.* at 108. Harihan said he was going to rape a virgin and said that if O.V. did not "give [him] some," he would rape C.V. *Id.* 108-09. O.V. and Harihan went to the basement, where he made her give him oral sex, called her a "whore" and "bitch," and then forced her to have vaginal sex with him. *Id.* at 100-11. O.V. felt she did not have a choice but to do as he said, because "if it was not [her], it would be [her] daughter." *Id.* at 112. Harihan then went upstairs and starting grabbing things, such as a piggy bank, a laptop, and an iPad. *Id.* at 113. O.V. went to the police the next day, but only told them that Harihan stole some things. *Id.* at 114. On March 18, 2014, she reported the whole incident to the police. *Id.* at 115.

On cross-examination, O.V. testified that she called C.V. from the bar to tell her she would be home soon. *Id.* at 121. The bartender she spoke to was female and, when the defense attorney asked why she had previously said the bartender was male, O.V. said there were two bartenders. *Id.* She agreed that when Harihan said he liked to rape virgins, she said that he should do to O.V. whatever he was going to do to C.V. *Id.* at 130. O.V. further testified that she would never have let Harihan watch her children. *Id.* at 139.

Officer Roxanne Montague testified that on March 12, 2014, O.V. reported the theft of an iPad and an Xbox controller. N.T., 3/16/17, at 13. O.V. did not report that any money was taken, that Harihan used force to enter the home, or that he assaulted her or C.V. *Id.* at 20-22. O.V. also told Officer Montague that Harihan had been babysitting her children. *Id.* at 17.

Rodney Nicholas, a case manager with the Department of Human Services ("DHS"), testified. Nicholas stated that when he visited O.V. on March 19, 2014, O.V. was frightened and did not open the door because she was afraid "it was him." *Id.* at 70. O.V. told Nicholas that Harihan had been waiting for her when she arrived home on March 11, and that he broke into the home a couple minutes after her. *Id.* at 71. Harihan told O.V. that he had to use the bathroom and went upstairs, which is when he attacked C.V. *Id.* When O.V. found Harihan on top of C.V., she grabbed Harihan and threw him off. *Id.* Harihan told O.V. that, "It's time to take her virginity. It's been a long time since I had some. It's either going to be you or her." *Id.* O.V. decided to take him to the basement, where they had sex. *Id.*

Officer Brian Richardson testified that he is assigned to the Special Victims Unit, Child Abuse Unit. *Id.* at 24. Officer Richardson interviewed O.V. on March 24, 2014. O.V. told him she saw Harihan on her way to Game Stop during the daytime hours of March 11. *Id.* at 33. She told Harihan that she was getting a game controller for C.V. *Id.* at 33-34. Harihan offered to get it for her, so O.V. gave Harihan money and asked him to leave the controller on the house steps. *Id.* at 34. She told Officer Richardson she ran into Harihan again after she got off the bus on her way home from work. *Id.* Harihan dragged her to an ATM and made her take out money. *Id.* at 35. She then went to a bar, where she called C.V., and spoke with a male bartender. *Id.* at 35, 37. O.V. told Officer Richardson that Harihan ripped C.V.'s shirt. *Id.* at 40. She also said that when Harihan went upstairs, she went to use her cell phone

to call the police, but Harihan threw it against a wall and broke it. *Id.* at 44. She initially told Officer Richardson that Harihan forced her to perform oral sex, and, at a later interview, said he forced her to perform oral and vaginal sex. *Id.* at 52. O.V. did not say that Harihan hit her or threatened to hit her that evening. *Id.* at 38. She said Harihan had her call him a cab, and that he took some electronics. *Id.* at 41. O.V. told Officer Richardson that Harihan never babysat for her children. *Id.* at 40.

On re-direct, Officer Richardson confirmed the remainder of O.V.'s statement, which was largely consistent with O.V.'s trial testimony. *Id.* at 47-52.

Officer Betty Cottle testified and provided information about O.V.'s and C.V.'s initial report of the sexual assaults, which was on March 18, 2014. *Id.* at 54-55. At that time, O.V. did not mention that she had attempted to call the police or that Harihan destroyed her phone. *Id.* at 67. O.V. reported that when she pulled Harihan off C.V., and Harihan said he liked to rape virgins, O.V. told Harihan to do to O.V. whatever he was going to do to C.V. *Id.* at 69. O.V. told Officer Cottle that Harihan had her call him a cab and that she paid for the cab. *Id.* at 69-70. O.V. reported that Harihan took an iPad, an iPhone S, an iPad plug, an Infinity game, an Xbox controller, a piggy bank with money in it, and a camera. *Id.* at 70-72.

The Commonwealth also presented evidence of the prior reports of abuse of O.V. by Harihan, which O.V. made to the police department. N.T. 3/15/17, at 148-71. In addition, a representative of the Philadelphia Children's

Alliance, Denise Wilson, testified about the process used to conduct forensic interviews of children. N.T., 3/15/17, at 170-77. The Commonwealth then played a tape of C.V.'s forensic interview. *Id.* at 179-80.[4]

The jury found Harihan guilty of corruption of a minor, indecent assault of C.V., and sexual assault of O.V. The jury found Harihan not guilty of rape or sexual assault of C.V., not guilty of burglary, and not guilty of rape or involuntary deviate sexual intercourse of O.V.

The trial court sentenced Harihan to consecutive one-to-two year terms of imprisonment for the indecent assault and corruption of minors convictions, and a consecutive five to ten year term of imprisonment of the sexual assault conviction. Harihan filed a post sentence motion, which was denied by operation of law. Harihan filed a notice of appeal.

Harihan raises the following claims:

> 1) Was not the jury's verdict based on speculation and conjecture, and because of this was not the evidence insufficient as a matter of law?
>
> 2) Was not the verdict so contrary to the weight of the evidence as to shock one's sense of justice and a new trial should be awarded?

Harihan's Br. at 4.

Harihan first claims that the Commonwealth's evidence was so contradictory that the verdict of guilt could only be based on speculation. He argues that the evidence was therefore insufficient to support the convictions.

---

[4] The recording is not part of the certified record.

He relies **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993), to support this claim.

Harihan argues that O.V.'s testimony contradicted the testimony of every other witness and that she provided several different accounts of the events of the day. He notes that she told only Officer Richardson that she had run into Harihan earlier that day and that Harihan was to deliver a game controller to her house; gave differing accounts of the gender of the bartender and the number of bartenders she spoke with; and only sometimes claimed that she attempted to call the police and that Harihan destroyed her phone. Harihan also claims that O.V.'s testimony differs from C.V.'s testimony, claiming that C.V. said that Harihan may have still resided with them on the night of the incident and that C.V. said Harihan touched her on top of her shirt. O.V.'s testimony and interview with Officer Richardson, in which she said she would have not let Harihan watch her children, also conflicted with her report to Officer Cottle, in which she said Harihan had been watching her children.

When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa.Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly

circumstantial evidence." ***Commonwealth v. Brown***, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*) (quoting ***Commonwealth v. Hutchinson***, 947 A.2d 800, 805-06 (Pa.Super. 2008)).

In ***Commonwealth v. Farquharson***, the Pennsylvania Supreme Court noted that although credibility determinations and weighing of the evidence are for the fact-finder, and an appellate court will not re-weigh the evidence, there is also a principle that provides "that a verdict of guilt may not be based upon surmise or conjecture." 354 A.2d 545, 550 (Pa. 1976). It found that "where the evidence offered to support the verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." ***Id.*** In such a situation, the evidence would be insufficient to support the verdict. ***Id.***

In ***Karkaria***, our Supreme Court applied this principle and concluded that the testimony of the complainant was so contradictory and unreliable that it was incapable of supporting a guilty verdict and, thus, the evidence entered by the Commonwealth was insufficient as a matter of law to support the verdict. 625 A.2d at 1172. In ***Karkaria***, the adolescent complainant alleged that her stepbrother raped her regularly between April 9, 1984, and September 19, 1984, while he was acting as her babysitter. ***Id.*** at 1167-68. The Supreme Court found the complainant's testimony was "riddled with critical inconsistences" and was so unreliable that it was insufficient as a matter of law to support the verdict. ***Id.*** at 1171-72. The Court noted that: (1) the rape allegations suggested the complainant had an ulterior motive

because they coincided with the pending reconciliation between the complainant's mother and stepfather, whom the victim disliked; (2) the complainant's description of the sexual assaults were "disturbingly vague" and she proffered only one factual scenario to describe the allegedly numerous assaults; and (3) the uncontroverted evidence contradicted the complainant's testimony regarding the timing of the assault, as she alleged the assaults only happened when the defendant was babysitting her, but she admitted, and others testified, that the defendant no longer babysat the complainant and was rarely at the family home at the time the alleged assaults occurred. ***Id.*** at 1171.

Here, although O.V.'s testimony was in some respects inconsistent with her own testimony, her prior statements, and C.V.'s testimony, the inconsistencies related to essentially collateral matters and did not make the evidence admitted at trial so unreliable that the verdict was based on surmise or conjecture. O.V. consistently testified that she found Harihan on top of C.V. and that Harihan forced O.V. to engage in sexual acts by threatening to rape C.V. if O.V. did not comply. Further, C.V.'s testimony corroborated that Harihan was on top of her. This testimony was sufficient to support the

verdicts of corruption of minors,[5] indecent assault,[6] and sexual assault,[7] and was not so "riddled with inconsistencies" that the verdict was based on conjecture.

Harihan next maintains that the verdict was against the weight of the evidence, again noting the inconsistencies in the testimony.

An appellate court reviews the denial of a motion for a new trial based on a claim that the verdict is against the weight of the evidence for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* at 1055 (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)).

A trial court should not grant a new trial "because of a mere conflict in the testimony." *Id.* Rather, to grant a new trial, the trial court must

---

[5] 18 Pa.C.S.A. § 6301(a)(1)(i) ("whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, . . . commits a misdemeanor of the first degree").

[6] 18 Pa.C.S.A. § 3126(a)(2) ("[a] person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person . . . for the purpose of arousing sexual desire in the person or the complainant and . . . the person does so by forcible compulsion").

[7] 18 Pa.C.S.A. § 3124.1 ("a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent").

- 11 -

"determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Id.** (quoting **Widmer**, 744 A.2d at 752). Stated differently, a trial court should not award a new trial unless the verdict "is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Id.** (quoting **Commonwealth v. Brown**, 648 A.2d 1177, 1189 (Pa. 1994)).

The trial court noted the Commonwealth presented the testimony of O.V. and C.V., who "each described [Harihan's] predatory, assaultive, and abusive behavior." Trial Court Opinion, filed Mar. 9, 2018, at 9. It found that the jury credited their testimony and the jury's verdict did not shock the court's conscience. We conclude that the court did not abuse its discretion in finding the verdict was not against the weight of the evidence.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/19

- 12 -